**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| JESUS SANCHEZ-NUNEZ, et al | \* |
| Plaintiffs | \* |
| v. | \*  Civil No. 05-1658(SEC) |
| PUERTO RICO ELECTRIC POWER AUTHORITY, et al. | \* |
| Defendants | \* |

**OPINION AND ORDER**

Before the Court are various dispositive motions filed by the Defendants (Dockets ## 15, 35, 80, 83, 160, 172, 181, 84 ), the oppositions thereto (Dockets ## 18, 38, 90 & 109) and some reply and sur-reply briefs (see, Dockets ## 98 & 122). After reviewing the parties' filings, the evidence in the record, and the applicable law, Defendants' motion to dismiss at Docket # 160 will be **GRANTED,** and Defendants' motion to dismiss at Dockets ## 80 & 83 and motion for summary judgment at Docket # 84 are found as **MOOT**.

**Factual and Procedural Background**

Plaintiffs in this case are Jesús Sánchez Núñez (hereinafter Sánchez), an employee of the Puerto Rico Power Electric Authority (PREPA), his wife, Zoriemy Rivera-Hernández, and the Conjugal Partnership between them (collectively referred to as Plaintiffs). Plaintiffs claim that the Defendants, PREPA and some of its officers, members of the Popular Democratic Party (PDP) violated Sánchez's right to due process of law under the Fourteenth Amendment because of their political animus against Sánchez, who is a "political activist" of Defendants' rival party, the New Progressive Party (NPP). The gist of Plaintiffs' contentions is that after the PDP took over the government in the 2000 general elections, the administration of the PREPA, previously under the control of the NPP, also changed hands to PDP followers. Sánchez alleges that he was subjected to a series of discriminatory acts stemming from the political tension between him and the administration, which eventually resulted in Sánchez's demotion from the position of Chief, Operation and Energy

**Civil Case No. 05-1658(SEC)**                                                                                                           2

Administration System to the position of Engineer III. He further avers that this demotion was contrary to his right to due process of law under the Fourteenth Amendment because it was made without prior notice and hearing. In the alternative, he contends that "even if [Co-defendant] Rosario, [the Executive Director of the PREPA], had rightfully removed [Sánchez] from his position, [under PREPA's laws] he should have been reinstated to the position of Head, Subdivision of Energy Administration and not to Engineer III...." See, Docket # 1.

Defendants in this case are: the PREPA; Edwin Rivera-Serrano (Rivera), PREPA's Executive Director; Héctor R. Rosario (Rosario), PREPA's former Executive Director; Carlos J. Castro-Montalvo (Castro), PREPA's Administrator of the Electrical System Operation Division of the PREPA, Irma Pérez-Acevedo (Pérez), Castro's wife and the Castro-Pérez Conjugal Partnership.

A brief procedural background is in order. This complaint was initially filed on June 17, 2005 (see, Docket # 1)[1] and was assigned to Judge Héctor Lafitte's docket. On February 16, 2007, upon Senior Judge Lafitte's retirement, this case was re-assigned to the undersigned. See, Docket # 169. Early in the proceedings Co-Defendants PREPA, Castro, and Rivera (hereinafter collectively referred to as the Defendants),[2] moved to dismiss for political discrimination claim insofar as it was based on facts that had not occurred within the statute of limitations. See, Dockets ## 15 & 35. Plaintiffs opposed (Dockets ## 18 & 38).[3] Rivera's and Castro's motion to dismiss raised other arguments as well: that Plaintiffs failed to state a claim upon which relief could be granted, lack of standing to sue by Zoriemy Rivera, qualified immunity as to the individual defendants, and that supplemental state law

---

[1] The complaint was later amended on October 25, 2005. See, Docket # 11.

[2] Co-Defendant Héctor Rosario is on default, and, as such, his dispositive motions were struck from the docket by Judge Laffite. See, Dockets ## 44, 44, 47, 54, 62, 63 & 132.

[3] PREPA's initial motion to dismiss based on the statute of limitations issue was denied by the Court as it was not appropriate at the motion-to-dismiss stage. See, Docket # 19.

**Civil Case No. 05-1658(SEC)**                                                                                                3

claims should be dismissed once the federal claims were dismissed.

Later on, Defendants filed an Emergency Motion to Stay or Dismiss the case premised on the Colorado River abstention, (see, Docket # 80 & 83). This motion was later amended to include an issue preclusion or collateral estoppel defense (see, Dockets ## 160 & 172). Plaintiffs opposed (see, Docket  #).[4] Defendants' first motion argued that applying the Colorado River abstention in this case was warranted due to the fact that Sánchez had sought administrative review of PREPA's decision to demote him, that this decision had been affirmed by the PREPA's Administrative Judge and the Puerto Rico Court of Appeals (PR Court of Appeals), and was, at that time, pending review by the Puerto Rico Supreme Court (PR Supreme Court). Defendants also argued that once the PR Supreme Court issued a decision in the state case, Plaintiffs would be collaterally estopped from arguing that Sánchez had a proprietary interest over the position from which he was demoted or that the Defendants violated PREPA's personnel regulations in reinstating him to the Engineer III position. On February 21, 2007, Defendants filed a motion informing the Court that the PR Supreme Court had denied Plaintiffs' request to review the Court of Appeals' decision, which rendered the judgment of the PREPA's administrative judge final and unappealable.

**Standard of Review**

In assessing whether dismissal for failure to state a claim is appropriate, the court must take "plaintiffs' well-pleaded facts as true and [indulge] all reasonable inferences therefrom to their behoof." Buck v. American Airlines, Inc., 476 F. 3d 29, 32 (1st Cir. 2007). "In conducting that tamisage, however, bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." Id., at 33; see also, Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999).  Moreover, "[w]hile plaintiffs are not held to higher pleading standards in § 1983 actions, they must plead enough for a necessary inference to be reasonably drawn." Marrero-Gutiérrez v. Molina, et al., – F 3d –, available at 2007 WL

---

[4] Defendants replied, see, Docket # 98, and Plaintiffs sur-replied, see, Docket # 122.

**Civil Case No. 05-1658(SEC)** 4

1765550, at *7 (1st Cir. 2007). Therefore, "even under the liberal pleading standards of Federal Rule of Civil Procedure 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Rodríguez-Ortíz v. Margo Caribe, Inc., -- F 3d --, 2007 WL 1732883 (1st Cir. 2007).

Furthermore, although the standard of review under Fed. R. Civ. P. 12(b)(6) is generally limited to the facts stated on the face of the complaint, a court may also consider documents appended to the complaint, documents incorporated by reference, and matters of which judicial notice can be taken. See, Allen v. Westpont-Pepperrel, Inc., 945 F. 2d 40, 44 (2nd Cir. 1991); Kramer v. Time Warner, 937 F. 2d 767 (2nd Cir. 1991).

**Applicable Law and Analysis**

Although there are various dispositive motions in the docket, we start by addressing Defendants' motion to dismiss the case on collateral estoppel grounds (Docket # 160). As such, we take as true the well pleaded facts in the complaint. We may also consider the documents incorporated by reference in the complaint and matters of which judicial notice can be taken. Consistent with this standard, we relate the facts material to the resolution of this case.

Co-Plaintiff Sánchez is a licensed electrical engineer who was hired by the PREPA, on or around September 1994, as Supervising Engineer of the Information Systems Division. In 1994, he was selected as Executive Aide to the Director of Information Systems, which was a trust position. In 1996, Sánchez completed the probationary period and became a career employee of PREPA; he was, at that time, assigned to the position of Engineer I. On or about April 1997, Sánchez was promoted to the position of Engineer III, a career position. Later in 1997, Sánchez was named to the trust position of Head, Subdivision of Energy Administration System, a unit within PREPA's Electrical System Operation Division. Plaintiffs allege, however, that this position was, upon request of various heads of departments within PREPA, changed to career status around November, 1999. In that same month, the then-Executive Director, Miguel Cordero, and PREPA's Board of Directors,

**Civil Case No. 05-1658(SEC)**                                                                                              5

merged the Subdivisions of Operation and Energy Administration System and the Electrical System Operation Division of the Electric System. This consolidation created a new career position of Chief, division of Operation and Energy Administration System, which responded to the Director of the Electrical System Operation Division (hereinafter Head of EMS).[5] Sánchez was appointed to this position.

Plaintiffs aver that with the change of administration in the central government in 2000, the PREPA's Board of Directors also changed hands. They allege that Sánchez was singled out by the Defendants who conspired to take adverse actions against Sánchez solely because of his political affiliation. Sánchez states that this pattern of harassment "began with an announcement from co-defendant Castro to Plaintiff that [the] new administration... affiliated [with] the Popular Democratic Party, was opening an internal investigation on how Sánchez was selected for the career service position of Chief, Operation and Energy Administration System...." See, Docket # 11, ¶ 21. Sánchez further contends that he was reprimanded by the Defendants because of his political activism during work hours, stripped of his functions and responsibilities as Chief of the Subdivision of Operation and Energy Administration System, and eventually demoted to the position of Engineer III. Plaintiffs' main allegations can be found in paragraph 26 of the complaint: "Rosario's action and subsequent demotion of Sánchez to a position that did not correspond with his career position both in rank and emoluments, prior to his becoming Chief of the subdivision, **constituted an illegal deprivation of Plaintiff's proprietary interest as created by statute, without due process and was based solely [on] Sánchez political activism**." Docket # 11, ¶ 26.

As such, we read Plaintiffs' complaint as seeking redress for Sánchez's demotion, which allegedly took place without due process of law and in violation of Sánchez's First Amendment rights. So read, what Plaintiffs aver is that Defendants, moved by political animus against Sánchez, deprived him of his constitutional right to have due process of law.

---

[5] For ease of reference we will refer to this position as Head of EMS, the term used by the PR Court of Appeals.

**Civil Case No. 05-1658(SEC)**                                                                                                          6

This conclusion is consistent with the statements made by Plaintiffs in various briefs in opposition to motions filed by the Defendants. Plaintiffs have repeatedly stated that "[w]hile the events stated on paragraphs 22 and 23 [pertaining to the alleged harassment suffered by Sánchez], serve as a **background** to the pains suffered by the Plaintiffs, the **actual discriminatory event, of which Plaintiffs are complaining and seeking relief from this Honorable Court [is]... Sánchez's demotion** to the position of Engineer III at the Energy Administration System**, and his removal from the career service position of Chief, Subdivision of Operation and Energy Administration System."** See, Docket # 18, ¶ 3 (our emphasis); see also, Docket # 38, ¶ 5 (same). Said opposition further states that "it is precisely the **demotion** of which Plaintiff seeks relief in his complaint." Id., at ¶ 5. And then again: "**[t]he sole remedy being sought in the instant case is the reinstatement of Plaintiff Jesús Sánchez to his career service position he (sic) occupied before June 21, 2004.... Reference to background prior discriminatory acts not related to his demotion and removal from his career position does not precluded (sic) the requested relief."** Id., at ¶ 6 (our emphasis).

Therefore, reading the complaint liberally as we must at this stage, with the aid of Plaintiffs' own statements in opposition to Defendants' motion to dismiss, we conclude that Plaintiffs seek relief for Sánchez's demotion to the position of Engineer III, which allegedly took place without due process of law and in violation of his First Amendment rights.

We now turn to Defendants' arguments in support of their motion to dismiss. These arguments are: (1) that the Colorado River abstention is warranted in this case, (2) that Co-Plaintiff Zoriemy Rivera lacks standing to sue pursuant to 42 U.S.C.A § 1983, (3) that once there was a final judgment on the administrative complaint filed by Co-Plaintiff Sánchez, the collateral estoppel doctrine would preclude Plaintiffs from arguing that Sánchez had a property interest over the position of Head of EMS and that his demotion to Engineer III violated his due process and First Amendment rights, (4) that there is no valid claim for conspiracy, (5) that the individual defendants are entitled to qualified immunity, and (6) that

**Civil Case No. 05-1658(SEC)**                                                                                              7

the supplemental state law claims should also be dismissed. See, Dockets ## 35 & 160.

We will not address the merits of the applicability of the Colorado River abstention as it was rendered moot when the PR Supreme Court denied *certiorari* in Sánchez's administrative complaint. As such, Defendants' motions on this point (Dockets ## 80 & 83) are found as **MOOT.**

We now turn to Defendants' arguments as to collateral estoppel. Defendants contend that the Court must give preclusive effect to the factual and legal findings of the PREPA's administrative judge, and the PR Court of Appeals. During the state proceedings it was determined that Sánchez did not comply with the experience requirements to occupy the position of Head of EMS, from which he claims to have been illegally demoted. It was also concluded that the change from trust to career status never took place and that had it been changed it would have been a null and void act under Puerto Rican law. As such, the PR Court of Appeals concluded that Sánchez had no property interest over the position of Head of EMS. The Commonwealth Court also concluded that political affiliation was not the reason for his demotion. Giving preclusive effect to these findings, Defendants argue, would impede Sánchez from re-litigating these issues, and, his claims for violation of his due process and First Amendment rights would necessarily fail. We agree.

*Collateral Estoppel*

It is well-settled that by virtue of the Full Faith and Credit Clause, "a proceeding in a state court collaterally estops inconsistent arguments in a later federal action, including actions under section 1983[; p]reclusive effect is given not only to state judicial proceedings, but also to facts found by a state agency acting in a judicial capacity that resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." Báez-Cruz v. Municipality of Comerío, 140 F. 3d 24, 28 (1st Cir. 1998)(internal citations omitted)(hereafter Báez-Cruz). The collateral estoppel doctrine to be applied is that of the state from which the judgment is taken. Id., at 28-29, citing, Kremer v. Chemical

**Civil Case No. 05-1658(SEC)** 8

Constr. Corp., 456 U.S. 461, 481-82 (1982). That is, Puerto Rican law will dictate the preclusive effect that is to be given to judgment issued by a Puerto Rican court. See, Cruz v. Melecio, 204 F. 3d 14, 18 (1st Cir. 2000). The "fact that a suit raises a federal question or seeks to vindicate federal constitutional rights does not blunt the force of [the command given by the Full Faith and Credit Clause]." Id.

According to Puerto Rican law, "[i]n order that the presumption of *res judicata* be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there [be] the most perfect identity between the things, causes and persons of the litigants, and their capacity as such." 31 Laws of P.R. § 3343; see also, Báez-Cruz, 140 F. 3d at 29. Although this statute "speaks of *res judicata*, *i.e.* claim preclusion, it also permits issue preclusion or collateral estoppel by judgment." Id., citing, Texaco Puerto Rico, Inc. v. Medina, 834 F. 2d 242, 245-46 (1st Cir. 1987). Furthermore, for collateral estoppel to apply the decision must be final and unappealable. Cruz v. Melecio, 204 F. 3d 14 (1st Cir. 2000).

The First Circuit has framed a two-part test to establish if the collateral estoppel defense would prevail: (1) would the Puerto Rico collateral estoppel rules preclude Plaintiffs from raising the same issues litigated in the administrative sphere and reviewed by the Commonwealth courts, and (2) did Plaintiffs have a full and fair opportunity to litigate the factual claims in the administrative proceedings. See, Báez-Cruz, 140 F. 3d at 29. Once we determine that the issue preclusion doctrine applies, we must determine whether Plaintiffs have viable due process and First Amendment violation claims in view of the facts already determined by final judgment of the Commonwealth courts.

We first examine each requirement of the collateral estoppel doctrine as applied to the facts of this case. Because this is a motion to dismiss, along with the facts alleged in the complaint, the Court will consider the facts and legal conclusions reached at the state level, of which the Court may take judicial notice. See, Allen, 945 F. 2d at 44; see also, Fed. R.

Evid. 201(which provides that "[a] judicially noticed fact must be one that is ... capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.") Furthermore, we note that the fact that these procedures took place and the content of these documents are not in dispute. See, Dockets ## 87, ¶¶ 17-21 & Docket # 106, ¶¶ 17-21. A review of these findings is also required to analyze the application of the collateral estoppel defense to this case.

We give a brief account of what Sánchez argued at the state level. Sánchez filed two complaints before the administrative judge of PREPA: (1) Complaint QG-04-749: alleging that the demotion to the Engineer III position did not follow the internal regulations of the PREPA, and was due to political discrimination, and (2) Complaint QG-04-712: challenging some administrative changes to his position on December 17, 2003.[6] See, Docket # 124, Exh. 22 at p. 1 (our translation).[7] These complaints named only PREPA as a party. Id. Furthermore, as to Complaint QG-04-749, the one relevant to this case, Sánchez alleged that the reinstatement was unwarranted because his position as Head of EMS had been assigned to the career service by virtue of a decision of the Evaluating Committee on November 22, 1999. Id. at p. 9.

*Identity of the parties*:

Although the case before the Court includes new parties on both sides that were not part of the administrative complaint (*i.e.* Sánchez's wife as a Plaintiff and PREPA's officers as individual defendants), the rather strict wording of Puerto Rico's mutuality requirement is not a bar to the application of the collateral estoppel defense in this case. See, Báez-Cruz, 140 F. 3d at 29.

In Báez-Cruz the plaintiffs were employees of the Municipality of Comerío who were

---

[6] Plaintiffs are not seeking relief for this employment action and as such, the factual and legal findings made by the administrative judge in this respect are irrelevant for this discussion.

[7] Defendants are to **ORDERED** to provide a certified translation of this document for the record **by September 10, 2007**.

**Civil Case No. 05-1658(SEC)**                                                                                             10

dismissed after the municipality's administration changed from the PDP to the NPP. They alleged that the dismissal was based on their political affiliation in violation of the First and Fourteenth Amendments to the US Constitution. The plaintiffs had sought reinstatement from the Puerto Rico Personnel Administration Systems Appeal Board (JASAP), the administrative body which handled government employment disputes, but the body had denied their request. Id, at p. 27. Plaintiffs brought an action pursuant to § 1983 in federal court the same day that the JASAP denied their motion for reconsideration. Id. The district court stayed the proceedings while the plaintiffs appealed the JASAP decision to the PR Court of Appeals, and eventually to the PR Supreme Court. The plaintiffs' attempts to overturn the JASAP decision were rebuffed at every turn. Id. The district court, soon after the PR Supreme Court had rendered its decision, granted the defendants' motion for summary judgment on collateral estoppel grounds. Id., at pp. 28-29.

   In Báez-Cruz the only party to the administrative case was the Municipality of Comerío. In the federal case, on the other hand, the plaintiffs added the individual officers as defendants. Id, at p. 29. The plaintiffs argued that collateral estoppel could not be applied because there was no perfect identity between the parties to each case as required by the statute. Notwithstanding the lack of perfect identity, the First Circuit stated that "[a]lthough the language of the provision calls for the most perfect identity of persons between the first and the second case... the Puerto Rico courts do not read the requirement literally." Id. It noted that the statute provides that "there is identity of persons whenever the litigants of the second suit are legal representatives of those who litigated in the preceding suit, or when they are jointly bound with them..." Id. As such, it reasoned that the provision permitted issue preclusion to operate against the plaintiffs, even when they added the individual officers as defendants to the federal case, because the Municipality and its officers would "share the obligation to satisfy the same claim." Id., at p. 30. It concluded that this "shared obligation is, under these circumstances, sufficient to allow preclusion." Id. Finally, it added that "[a]s plaintiffs were themselves active participants in the JASAP proceedings and the consequent

**Civil Case No. 05-1658(SEC)**                                                                                          11

appeals, their own addition of the officer defendants will not defeat the defense of collateral estoppel by judgment." Id.

The Court concludes the same in this case. Plaintiffs' addition of the individual officers (*i.e.* Rosario, Castro and Edwin Rivera) will not preclude the application of the collateral estoppel doctrine since both PREPA and the individual officers would share the same liability. On the other hand, the inclusion of Mrs.Rivera, Sánchez's wife, to this action does not alter this result. As explained later in this opinion, she lacks standing to bring a § 1983 claim and, as such, cannot be considered in determining whether the collateral estoppel defense is applicable to this case.

*Identity of Causes*

Collateral estoppel or issue preclusion also requires that the factual cause in both the first and the second case be the same. In Báez-Cruz the First Circuit concluded that this requirement was met because the underlying facts giving rise to the administrative complaint were the same as those behind the section 1983 action before the court. Id., at p. 30. It stated that "[e]ven were collateral estoppel by judgment to require an identity of causes, we would have no trouble concluding that the two cases' identical subject matter satisfied that requirement." Id. The same is applicable in this case. What Sánchez complained of at the administrative level was that he was deprived of a proprietary interest over his position as Head of EMS, which he alleged was a career position, and in the alternative, that his reinstatement to the position of Engineer III was not made in accordance with the PREPA's internal regulations, in violation of his due process rights, and moved by political animus against him.

Plaintiffs argue that the collateral estoppel should not be applied in this case because the administrative judge of PREPA had no jurisdiction to hear actions for damages based on due process violations, political discrimination and torts law. See, Docket # 122, at p. 7. However, the exact same argument was rejected by the First Circuit in Báez-Cruz. The Court

**Civil Case No. 05-1658(SEC)** 12

stated that "[i]t is well-established that judicially reviewed administrative fact-finding may later estop a federal claim, even though the state administrative body itself was unable to consider the federal claim." Báez-Cruz, 140 F. 3d at p. 31. The Báez-Cruz plaintiffs argued, as do Plaintiffs here, that "they were unable to argue their federal constitutional claims before JASAP because the Commonwealth administrative proceedings were restricted to determining solely whether [their dismissal] violated Puerto Rico's Personnel Law." Id, at pp. 30-31. That is, they contend that the administrative judge had no jurisdiction to hear their constitutional claims, and, as such, the collateral estoppel doctrine cannot be applied.

The First Circuit in Báez-Cruz found this argument without merit because plaintiffs had argued explicitly in the administrative case that their dismissal was based on their political ideology, and the JASAP rejected their argument. JASAP determined, and the Commonwealth Courts affirmed, that their dismissal had followed the Personnel Law and was not moved by their political affiliation.

Like the Báez-Cruz plaintiffs, Sánchez contended before the PREPA's administrative judge that his demotion to Engineer III was in violation of the PREPA's Personnel Regulations, his due process rights and in reprisal for his political beliefs. See, Docket # 124, Exh. 24, Judgment by the PR Court of Appeals. However, these arguments were dismissed by the administrative judge and the PR Court of Appeals, which held that Sánchez's demotion to the position of Engineer III was due to his non-compliance with the requirement of ten-years of experience in the area of programming and operation of electrical systems, and not to discriminatory reasons. See, Dockets ## 124, Exh. 22, PREPA's Administrative Judge's Resolution, at p. 9 (the position was never changed to career status because he did not meet the required experience for the career position; "had the change in category taken place, the Personnel Office would have incurred in a null act, contrary to [PREPA's Personnel's regulations].")(our translation); Docket # 124, Exh. 24, at p. 16 & 17 (stating that Sánchez did not meet the requirement of ten years of experience and that the Court was not persuaded by Sánchez' allegations that the change in the experience requirement when the

**Civil Case No. 05-1658(SEC)**                                                                                                    13

positions of Head of Operations and Head of Energy Management were merged responded to discriminatory reasons or reprisals.)

Furthermore, the PR Court of Appeals concluded that the position of Head of the EMS, which he held from September 1997, was in the trust service, and that there was no evidence in support of Sánchez's contention that his position was changed from a trust position to a career position. Docket # 124, Exh. 24, at p. 14. It also emphasized that the parties had stipulated before the Administrative Judge that the position of Head of EMS (over which Sánchez claims a property interest) was in the trust service. Id. The Court further stated that despite Sánchez's contentions in this regard, "there was never a personnel action from the Executive Director or from payroll to change his position [from trust to career status]." Id. In this context, the Court concluded that "[t]he mere expectation that he would be reclassified to a career position without any action by the agency that unequivocally evidenced such appointment does not grant the petitioner anything beyond unilateral expectations." Id.

All these factual findings are material to Sánchez's due process claims, because "without career status, [a plaintiff lacks] a property interest [over his] employment under Puerto Rican law and thus [cannot] prevail on [a] Fourteenth Amendment claim." Figueroa-Serrano v. Ramos-Alveiro, 221 F. 3d 1, 5 (1st Cir. 2000). Therefore, for the Court to determine whether Sánchez's Fourteenth Amendment rights were violated, the Court must first examine Puerto Rican law to establish if he has a proprietary right over the position of Head of EMS. "The Constitution does not create property interests; instead they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Id.; see also, F. See, Kauffman v. P.R.T.C., 841 F. 2d 1169, 1173 (1st Cir. 1988); Aguiar-Carrasquillo v. Agosto Alicea, 445 F. 3d 19, 27 (1st Cir. 2006)(hereafter Aguiar).

Therefore, whether Sánchez had a proprietary right over the position of Head of EMS, is a matter of Puerto Rican law. Furthermore, determining what position Sánchez needed to

**Civil Case No. 05-1658(SEC)** 14

be reinstated to once demoted, is also determined by Puerto Rican law. Both determinations have already been made by the Puerto Rico courts albeit to Plaintiffs' dissatisfaction. See, Docket # 124, Exh. 22, PREPA's Administrative Judge's Resolution; Docket # 124, Exh. 24, PR Court of Appeals' decision affirming the Administrative Judge's Resolution; Docket # 172, Exh. 1, PR Supreme Court's denial of *certiorari*. We must also note that the decision of the PR Court of Appeals, adverse to Sánchez, was made in no uncertain terms: "[w]e must once again point out that the writ reveals that the petitioner continuously presents contradictory and inadmissible arguments since he tries to base his entire request on his alleged right to a career position that he never held." Docket # 124, Exh. 24, at p. 16.

In view of the above, we conclude that the identity of cause requirement is also met in this case.

*Identity of Things*

Under Puerto Rican law, there is identity of things "if a judge ventures to contradict a prior decision asserting a natural or incipient right." Lausell Marxuach v. Díaz de Yañez, 103 D.P.R. 533, 535; 1975 WL 38829 (P.R.), 3 P.R. Offic. Trans. 742. We have no doubt that for the Court to conclude that Sánchez had a proprietary right under Puerto Rico law over the position of Head of EMS and that his due process was violated for political reasons, we would need to contradict the determinations already made by the Puerto Rican courts, as discussed above. Therefore, the identity of things requirement is also met.

Finally, because Sánchez appealed the decision of the administrative judge to the PR Court of Appeals and then to the PR Supreme Court, he exhausted all possible means of review and the decision is now final and unappealable. Therefore, all the requirements of the doctrine are met in this case.

Having concluded that all the requirements for the collateral estoppel doctrine are present in this case, we now examine the second prong of the question, as posed by the First Circuit in Báez-Cruz: did Sánchez have a full and fair opportunity to litigate the factual

**Civil Case No. 05-1658(SEC)**                                                                                                 15

claims in the administrative proceedings? Báez-Cruz, 140 F. 3d at 29. To meet this standard, the "state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due process Clause." Báez-Cruz, 140 F. 3d at 30, citing, Kremer v Chemical Const. Corp., 456 U.S. 461, 481 (1982). That is, "[r]edetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." Kremer, 456 U.S. at 481. However, "no single model of procedural fairness, let alone a particular form of procedure, is dictated by the Due Process Clause." Id.

      The administrative procedure before PREPA's administrative judge is described below. There is a formal administrative procedure to review PREPA's personnel decisions through a Complaint Procedure. A.E.E. v. Rivera-Fuentes, 2006 T.S.P.R. 25, at 4 (our translation). This procedure was enacted to "channel the controversies that emerge in relation to managerial employees." Id. According to this procedure, an examining officer, who serves as an administrative judge, is assigned to solve the complaint. Id. The administrative judge must be a lawyer and cannot be employed by PREPA. Id. He may issue subpoenas to witnesses, require that certain documents be produced, and schedule evidentiary hearings. Id., at 4. After all the evidence is presented the administrative judge may order the parties to brief their arguments in support of their position. Id. Finally, judicial review in the Commonwealth Courts is available. The US Supreme Court found that a similar procedure met the minimum due process requirements. See, Kremer, 456 U.S. at 484-85 (stating that the Court "had no hesitation in concluding that this panoply of procedures, complemented by administrative as well as judicial review, is sufficient under the Due Process Clause.") Because Sánchez had a full and fair opportunity to present evidence and argue his claims before an administrative judge, independent from the PREPA, whose decision could be judicially reviewed, we conclude that the factual and legal determinations made by the administrative judge regarding Sánchez's due process claims must be given preclusive effect

by this Court.

As stated above, the PR Court of Appeals determined that, in view of the evidence stipulated by the parties, there was no evidence that Sánchez's position as Head of EMS was ever transferred to the career service. See, Docket # 124, Exh. 24, at p. 13. To the contrary, the parties stipulated that said position was in the trust service. Id. The administrative judge also concluded, and Sánchez did not seek review of this conclusion, that even if the PREPA had given career status to Sánchez, said action would be null and void under Puerto Rico law, because it would have not followed PREPA's regulations. Docket # 124, Ex. 22, at p. 11. These conclusions were based on Sánchez's non compliance with the minimum requirements of the career position. Docket # 124, Exh. 24 at p. 13 & Exh. 22 at p. 11.  Furthermore, the Court of Appeals stated that Sánchez's allegation that his demotion was due to political reasons was not supported by the evidence. Docket # 124, Exh. 24 at pp. 16-17.

For Sánchez to succeed on his due process claims, the Court must first determine that he had a proprietary interest over the position from which he claimed he was demoted. This determination would require the Court to interpret Puerto Rican law. See, Figueroa-Serrano v. Ramos-Alverio, 221 F. 3d 1, 6 (1st Cir. 2000). The First Circuit has already decided that when governmental employees are hired "in violation of regulations promulgated under order of the Puerto Rico Supreme Court... [they] [cannot], upon termination, benefit from the property status of such positions." Id. For Sánchez to have a proprietary interest over the position of Head of EMS, PREPA must have had granted him "career status in accordance with applicable Puerto Rican law." Id., see also, Aguiar, 445 F. 3d at 27 (stating that "public employees hired for career positions in violation of the Puerto Rico Personnel act, or agency regulations promulgated thereunder, may not claim property rights to continued expectations of employment because their career appointments are null and void *ab initio*.")

The Commonwealth Courts have already concluded that Sánchez did not have a proprietary interest over the position of Head of EMS because he lacked the necessary

**Civil Case No. 05-1658(SEC)** 17

experience, and that said appointment would have been null and void under PR law. Furthermore, Sánchez argued before the administrative judge and the PR Court of Appeals, that the ten year experience requirement was a pretext by Defendants to remove him from the position moved by political animus. These arguments were also rejected by the PR Court of Appeals. As such, Sánchez's allegations that his position as Head of EMS had career status and that his demotion violated his Fourteenth Amendment right to due process of law are without merit. Consequently, his § 1983 claim for due process violation is hereby **DISMISSED with prejudice**.

On the other hand, for Sánchez to succeed in a political discrimination claim he must show that "political affiliation was a substantial or motivating factor behind the challenged employment decision", in this case his demotion. See, Báez-Cruz, 140 F. 3d at 28, citing, Mount Healthy City Bd. Of Educ. v. Doyle, 429 U.S. 274, 287 (1977); see also, Figueroa-Serrano, 221 F. 3d at 7; Aguiar, 445 F. 3d at 25. However, as we explained above, the Commonwealth Courts already concluded that it was Sánchez's non compliance with the requirements for the Head of EMS position and not his political affiliation which motivated his demotion. In light of this determination, and applying the collateral estoppel defense, Sánchez's first amendment will also be **DISMISSED with prejudice.**[8]

Defendants also argue that Co-Plaintiff Zoriemy Rivera-Hernández's claims must be

---

[8] Even if we were to assume that Sánchez's demotion was politically motivated, his First Amendment claim would still fail. See, Aguiar, 445 F. 3d at 26 (stating that "[e]ven if *arguendo*, he had made such a showing, defendants have alleged facts in support of their Mt. Healthy claim that Aguiar's appointment violated GDB Personnel Regulations, and thus that they would have removed him from the position of Assistant Director of Private Finance regardless of his political affiliation because, among other reasons, he was not qualified for the position.") Defendants in this case would also have a Mt. Healthy defense because, as concluded by the Commonwealth Courts, Sánchez was not qualified for the position as he lacked the required experience, and his designation would have been void and null according to Puerto Rican law. See, Mt. Healthy, 429 U.S. at 287 (stating that once a plaintiff shows that political affiliation was a substantial factor in the challenged employment decision "the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct.")

**Civil Case No. 05-1658(SEC)** 18

dismissed because she lacks standing to sue for the violation of Sánchez's constitutional rights. We agree with Defendants. See, Soto v. Flores, 103 F. 3d 1056, (1st Cir. 1997)(stating that although plaintiff suffered mental anguish as a result of her son's death, which was caused by defendants' violation of the deceased's constitutional rights, "[t]he question is not one of a degree of suffering, but whether the plaintiff can establish a violation of a federal right[; w]hile [plaintiff's] loss was of enormous, heartbreaking magnitude, the Constitution does not protect against all harms. She herself was not deprived of a constitutionally protected interest, and she may not bring a section 1983 due process claim...") As such, Co-Plaintiff Rivera's claims pursuant to section 1983 are **DISMISSED with prejudice.**

Plaintiffs also brought a claim for conspiracy to violate their constitutional rights. See, Docket # 11, ¶ 20. Defendants argue that this claim must also be dismissed because Plaintiffs failed to show that their constitutional rights were violated. "In order to make out an actionable conspiracy under section 1983, a plaintiff has to prove not only a conspirational agreement but also an actual abridgment of some federally-secured right." Nieves v. McSweeney, 241 F. 3d 46, 47 (1st Cir. 2001). Because we have concluded that Sánchez is precluded from re-arguing in this forum that he had a property interest over the position of Head of EMS, and that his right to due process and First Amendment rights were violated, Plaintiffs' claim for conspiracy under section 1983 also fails, and will be **DISMISSED with prejudice**.

Plaintiffs' complaint seeks further relief under Puerto Rico contract and torts law. Defendants seek dismissal of these claims arguing that once the Court dismisses all federal claims before the Court, absent diversity jurisdiction, it is free to dismiss the remaining state law claims without prejudice. Because all of Plaintiffs' federal claims have been dismissed, the Court will not exercise jurisdiction over the supplemental state law claims. Plaintiffs' claims pursuant to Puerto Rico contract and torts law are hereby **DISMISSED without prejudice.**  Finally, Defendants also sought to dismiss Plaintiffs' claims on qualified

**Civil No. 05-1658(SEC)**                                                                                                    19
_____

immunity grounds. See, Docket # 84. Having dismissed all of Plaintiffs' claims for other reasons, we need not address this argument.

### Conclusion

Per the foregoing, Defendants' motions to dismiss at Dockets ## 35 & 160 are **GRANTED**. Defendants' motion to dismiss at Docket # 80 and motion for summary judgment (Docket # 84), are found as **MOOT**. Plaintiffs' federal claims pursuant to section 1983 are **DISMISSED with prejudice**; Plaintiffs' state law claims are **DISMISSED without prejudice**. Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of August, 2007.

S/ *Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge